HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* INTER-MOUNTAIN LIFE INSURANCE CO.

No. 537. Argued March 5, 7, 1935.—Decided April 1, 1935.

*Assistant Attorney General Wideman,* with whom *Solicitor General Biggs* and *Messrs. James W. Morris, Norman D. Keller,* and *Edward H. Horton* were on the brief, for petitioner.

*Mr. A. R. Serven,* with whom *Mr. Stephen W. Downey* was on the brief, for respondent.

By leave of Court, *Messrs. Homer Hendricks, George M. Wolcott,* and *O. H. Chmillon,* and *Messrs. Thomas Watters, Jr.,* and *Edwin R. Morrison* filed briefs as *amici curiae,* in support of the contentions of respondent.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The question for decision is whether assets held by the company in 1922 against matured and unpaid coupons attached to 20-payment life coupon nonparticipating policies, constituted a reserve fund required by law within the meaning of § 245 (a) (2) of the Revenue Act of 1921.[1]

That section declares that net income means gross income less, among other permissible deductions, an amount equal to four per cent. of the mean of the "reserve funds required by law" held at the beginning and end of the taxable year. Respondent, a stock company, incorporated under Utah law and commenced business in 1911. The laws of that State require, as a condition of doing life insurance business, that the assets of the company shall equal or exceed all liabilities for losses reported, expenses, taxes and other outstanding liabilities, including the legal reserves. And they prescribe the rate of interest to be assumed, and the mortality table to be used, for the purpose of making valuations of life insurance policies and determining the reserves required to be maintained.[2]

---

[1] "Sec. 245. (a) That in the case of a life insurance company the term 'net income' means the gross income less— . . . (2) An amount equal to the excess, if any, over the deduction specified in paragraph (1) of this subdivision, of 4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the taxable year . . ." 42 Stat. 261.

[2] Revised Statutes of Utah, 1933, Title 43, c. 3, § 4. "No stock company shall do any insurance business in this state before its capital is fully paid up. Said capital must be unimpaired, that is, the assets of such company must equal or exceed all liabilities for losses reported, expenses, taxes and other outstanding liabilities, including the legal reserves as provided in sections 43–3–12 . . ." § 12. "For the purpose of making valuations of life insurance policies and of determining the reserves required to be maintained therefor under the provisions of this title the rate of interest assumed shall be 3½ percent per annum, and the rate of mortality shall be established by the table known as the 'American Experience Table of Mortality' for policies issued after January 1, 1910 . . ."

The record contains a specimen policy for $10,000, applicable to age 35, issued in consideration of 20 annual premiums of $420.90. Attached are 19 coupons maturing serially on anniversary dates of the policy, beginning with the first and ending with the nineteenth. Each coupon is a promise that at its maturity the company will pay the amount specified to the owner of the policy.

The policy states: The company will credit insured the face amount of any matured coupon as it becomes due and pay compound interest thereon, thereby creating a fund to the credit of the insured which may be applied to the payment of premiums or at any time withdrawn in cash; and, if not so applied or withdrawn prior to his death, it will pay the coupon values with interest to date of death to the beneficiary in addition to the face amount of the policy. The insured during the first year or within a month after the due date of the second annual premium may elect to convert the coupons as they mature into paid-up life additions to the policy which are only reconvertible into cash surrender value.

At the end of 20 years, if all premiums have been paid in cash and if the amount of each matured coupon has been left with the company to accumulate at interest, then upon surrender of the policy and all coupons the insured shall select one of the following options: A guaranteed cash payment of $8,000; a paid-up policy for $14,130, subject to insurability; a guaranteed annual income of $490 for at least 20 years and as many more as the insured shall survive; a paid-up policy for $10,000 and an annual income of $174.40 during life. At the end of 15 years the company will issue a fully paid-up policy of $10,000 upon surrender of the original policy and the first 14 coupons representing values left on deposit at compound interest.

The mean of the company's reserve funds in 1922 set up against liabilities other than matured coupons was $942,-751.40. Later herein these are referred to collectively as "insurance reserves." The company claimed and the

Commissioner allowed as a deduction four per cent. of that amount. It carried a separate reserve against matured, unsurrendered and unpaid coupons, the mean of which in that year was $136,523.39. In its return the company deducted four per cent. of that amount, but the Commissioner disallowed the item. The Board of Tax Appeals, in harmony with its prior constructions of the clause in question,[3] held the coupon reserve deductible. It was sustained by the court, following cases in that and other Circuit Courts of Appeals.[4]  71 F. (2d) 962. That being in conflict with a recent decision of the Court of Claims,[5] this court granted a writ of certiorari.

In the reserves required by the laws of Utah and of the other States in which the company issues policies of the described class, there is included an amount sufficient to cover not only all elements of insurance but also the coupon liability. We are not here dealing with reserves in relation to solvency of the company. The thing to be ascertained is the meaning that Congress intended by the language " 4 per centum of the mean of the reserve funds required by law." The clause to be construed relates exclusively to life insurance companies. It is intended to define a deduction which they are permitted to make in the calculation of the net amount to be taxed. The rule that ambiguities in statutes imposing taxes are to be resolved in favor of taxpayers does not apply. Deductions are allowed only when plainly authorized.

---

[3] Standard Life Insurance Co. of America, 13 B. T. A. 13. Reserve Loan Life Insurance Co., 18 B. T. A. 359. Farmers Life Insurance Co., 27 B. T. A. 423. Missouri State Life Insurance Co., 29 B. T. A. 401. Atlas Life Insurance Co., 29 B. T. A. 750.

[4] *Commissioner* v. *Standard Life Ins. Co.* (C. C. A.-3), 47 F. (2d) 218. *Commissioner* v. *Western Union Life Ins. Co.* (C. C. A.-9), 61 F. (2d) 207. *Commissioner* v. *Great American Life Ins. Co.* (C. C. A.-10), 70 F. (2d) 133.

[5] *Continental Assur. Co.* v. *United States,* 8 F. Supp. 474. Cf. *Minnesota Mutual Life Ins. Co.* v. *United States,* 66 Ct. Cls. 481. *Massachusetts Mutual Life Ins. Co.* v. *United States,* 56 F. (2d) 897.

*Ilfeld Co.* v. *Hernandez,* 292 U. S. 62, 66. *New Colonial Ice Co.* v. *Helvering,* 292 U. S. 435, 440.

The word " reserve " has many meanings. Accounts creating reserves are set up in almost every line of business, and funds evidenced by the book entries are held for many and widely different purposes. As the Act does not permit corporations other than insurance companies to make deductions of the kind here under consideration, " reserve funds " may not reasonably be deemed to include values that do not directly pertain to insurance. In life insurance the reserve means the amount, accumulated by the company out of premium payments, which is attributable to and represents the value of the life insurance elements of the policy contracts. The premiums include enough, over and above what is needed to maintain proper insurance reserves, to provide for the discharge of coupon liability according to the terms of the policy. The coupon values are the equivalent of cash and may be used to pay premiums on the face amount of the policy, to procure additional insurance, to lessen the number of annual premiums, or otherwise to obtain insurance protection. The amounts so applied cease to exist as coupon liabilities and automatically become a part of the life insurance reserves. These differ essentially from coupon liability. Life insurance matures only upon the death of the insured and the life reserve is based upon that contingency, whereas liability on the matured coupons depends upon no contingency. It follows that the insurance reserves alone constitute the base on which the deduction is to be computed. Reserves against matured coupons are excluded. *McCoach* v. *Insurance Co. of N. A.,* 244 U. S. 585, 589. *United States* v. *Boston Insurance Co.,* 269 U. S. 197, 202. *New York Life Ins. Co.* v. *Edwards,* 271 U. S. 109, 119. *Duffy* v. *Mutual Benefit Ins. Co.,* 272 U. S. 613, 618–619. *Continental Assurance Co.* v. *United States,* 8 F. Supp. 474.

*Reversed.*