### GREAT SOUTHERN LIFE INS. CO. v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 8177.

Circuit Court of Appeals, Fifth Circuit.

March 17, 1937.

Walter E. Barton, of Washington, D. C., for petitioner.

Edward F. Horton, J. Louis Monarch, and Sewall Key, Sp. Assts. to Atty. Gen., Robert H. Jackson and James W. Morris, Asst. Attys. Gen., and Herman Oliphant, Gen. Counsel, Dept. of Treasury, and John D. Kiley, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

This petition presents for review the adverse rulings of the Board in a proceed-

ing for redetermination of deficiencies for the calendar years 1928, 1929, and 1930. The Board's opinion, reported in 33 B.T.A. 512, quite fully and correctly states the facts out of which arise the five questions for decision. We will restate the facts as to each question, not in detail, but in summary as they bear upon each. The five questions presented are:

(1) Whether personal property taxes paid by petitioner to the State of Texas during the years 1928, 1929, and 1930, respectively, under its laws, constituted deductible investment expenses within the meaning of section 203 (a) (5) of the Revenue Act of 1928 (26 U.S.C.A. § 203 and note).

(2) Whether petitioner realized interest income during the year 1928 in the amount of $27,364.26 on the foreclosure of a certain collateral loan No. 28 to one R. C. Toombs, or only $16,833.33.

(3) Whether the petitioner, which kept its books and made its returns on the cash receipts and disbursements basis for 1930, realized taxable income of $45,802.38 in that year within the meaning of section 203 (a) (2) of the Revenue Act of 1928 (26 U.S.C.A. § 203 note), on the receipt during the year 1930 of receiver's certificates of the International Life Insurance Company in said amount.

(4) Whether petitioner, under the provision of section 203 (a) (2) of the Revenue Act of 1928, may include in its reserve funds required by law at the beginning of the tax year the reserve funds on policies of other insurance companies reinsured and acquired by purchase by petitioner after January first of the taxable year.

(5) If they may be, whether the allowance should be as of the beginning of the taxable year or as of the respective dates when the policies were reinsured or acquired.

### The Personal Property Taxes.

Upon this question, these are the controlling facts: Petitioner is a life insurance company, organized under the laws of the State of Texas. By the laws of that State, a domestic insurance company is required to pay taxes on its personal property. Under the statute the taxable value of its personal property is arrived at by deducting from the total valuation of its assets, first the reserves and then the assessed value of its real estate. Here this was arrived at by deducting the value of its assessed realty from its capital and surplus. Petitioner paid personal property taxes arrived at in that way as follows:

| | |
|---|---|
| 1928 | $66,565.54 |
| 1929 | 62,894.21 |
| 1930 | 94,178.47 |

During these years petitioner owned investments in an amount equal to its reserves, capital, and surplus. The point for decision is the narrow one, whether these taxes are deductible as investment expenses under section 203 (a) (5).[1] Petitioner concedes that the statute does not in terms authorize the deductions claimed. It insists, however, that in the absence of statute or regulations excluding them they must be considered as included in investment expenses. In support of this contention it presses us with arguments drawn from professorial and scholastic characterizations,[2] reports of committees of Congress, and finally with considerations of discrimination and hardship resulting from a different construction. These considerations are that other corporations, including other kinds of insurance companies are specifically allowed such tax deductions. The argument is that not to construe investment expenses as including such taxes in the case of life insurance companies would be to impute to Congress a manifestly unjust intention.

Respondent points out that deductions are matters of grace, and can be claimed and enjoyed only as granted, and that Congress has never authorized the deduction of taxes as expenses, but always as taxes. He insists that to impute to Congress in the face of that uniform practice an intent to allow tax deductions as investment expenses would be not to construe but to rewrite the statute. He enforces this posi-

---

[1] § 203. (a) * * * (5). Investment expenses. Investment expenses paid during the taxable year: Provided, That if any general expenses are in part assigned to or included in the investment expenses, the total deduction under this paragraph shall not exceed one-fourth of 1 per centum of the book value of the mean of the invested assets held at the beginning and end of the taxable year.

[2] These include taxes as investment expenses along with cost of making, handling and protecting investments, bad debts, losses, other accounts, and repairs on assets.

tion by calling attention to the grant by name of tax deductions in subdivision 6 of section 203 (a) of the act (26 U.S.C.A. § 203 and note), immediately following the section in question. We think respondent and the Board have the right of it. We are not impressed with the petitioner's arguments to the contrary. The scholastic definition invoked lacks both authority and appositeness. It relates not to taxation but to management. Besides its allinclusiveness embracing items never regarded in the law of taxation as expenses deprives it of authoritative force. Reference to committee reports are no more helpful, while the argument of discrimination and hardship falls in the light of the fact that Congress has provided for life insurance companies, and they have accepted, a special method of taxation which must be applied as provided.

### Interest Income for 1928.

This question presents little difficulty. In 1928 petitioner foreclosed upon, and sold, collateral pledged with it by Toombs, crediting the note with the full amount of the principal, and interest of $27,364.26. It returned this sum as interest collected in 1928, but contended before the Board that no part of it was received in that year. If nothing more appeared than this, clearly this interest item would be regarded as interest received and taxable in that year. Helvering v. Midland Mutual Life Insurance Co., 57 S.Ct. 423, 81 L.Ed. ——, February 15, 1937. Petitioner, however, insists that though it credited that amount of interest on its bid, it because of court orders received interest only to the extent of $16,833.33. This contention is based on an order entered in July, 1930, in the receivership of International Life Insurance Company, whose stock it was that petitioner had held as collateral and sold, to the effect that interest on the loan should run only from January 23 to August 15, 1928. It insists that this order had the effect of actually reducing to that amount the interest petitioner claimed to have received. Respondent points out that whatever effect this order might have had on the taxing situation was nullified by another order entered in the same year directing issuance to petitioner of receiver's certificates including an amount for interest of $27,364.26. We think it clear that taken as a whole the facts fully support the finding of the Commissioner and the conclusion of the Board.

### $45,802.38 Interest Income for 1930.

This item of interest, like the one just preceding, arose in connection with the Toombs note and collateral. The precise question to be determined is whether by acceptance in 1930 of receiver's interest-bearing certificates for $45,802.38 for accrued interest on the Toombs loan to the date of the issuance of the certificates petitioner actually received that amount as interest. It contends that this amount was really not interest on the Toombs loan, but part of an amount arrived at in settlement and adjustment with the receiver of International of its claim upon 9,000 shares of stock in that company. Respondent, insisting that petitioner accepted it as interest and returned it that way, points to the calculation employed in arriving at the amount of the certificates, and the fact that petitioner returned this sum as interest. He insists that the Board's findings are supported by his determination that this sum was collected as interest, and by the admissions of petitioner itself and that petitioner has failed to overthrow the conclusive effect of this determination and admission. We agree with respondent. We think it clear that the Board was right.

### The Reserve Funds.

The contention pressed here is for a liberal, as opposed to a literal, construction of section 203 (a) (2), which reads, in part as follows: "(2) Reserve funds. An amount equal to the excess, if any, over the deduction specified in paragraph (1) of this subsection, of 4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the taxable year."

This construction is invoked because of the fact that after the beginning of the calendar year petitioner reinsured and acquired, by purchase agreements, all of the outstanding policies of three life insurance companies, one on March 5, 1929, one on February 11, 1930, and one on March 12, 1930. In consideration of the assumption agreement of the reinsurance contracts, the reinsured companies assigned to petitioner their interest in the premiums to be paid on and their rights under the policies and contracts assumed, and reinsured by petitioner, their interest in all policy loans and premium notes, and also properties and securities equal in value to the mean reserves on all of their outstanding policy contracts in force at the time the reinsurance contracts took effect. Petitioner claims the right to treat these reserve funds on hand on the first of the year with

the companies whose policies it took over, as having in effect been on hand January 1st with it. Thus it claimed as deductions not only the reserves set up on its own policies on January 1st, but those the reinsured companies had then set up. The Commissioner, claiming that the invoked section allows deduction of only the reserves held by the taxpayer itself at the beginning and end of the taxable year, denied the deduction. This denial was sustained by the Board. Petitioner urged before the Board, it insists here, that since the statute does not state by whom the reserve funds should be held, the proper construction of it in this case would be, upon the principle of relation, to treat the reserves the reinsured companies held at the first of that year as held then by petitioner, as though, and to the same extent as if, the contract of reinsurance had been made before the year's beginning. In the alternative it argued that if a construction relating back to the beginning of the year is not permissible at least it should be entitled to have these reserves considered as held by, and therefore allowed to it, from the effective dates of the reinsurance contracts. The Board rejected both of these contentions on the familiar ground that authority for deductions must be sought and found alone in the statutes conferring them; that since the taxpayer did not own the policies and the reserve funds on the first of January, and the statute provides for taking into account only reserves on hand at the beginning of the year, there was no warrant in law for doing what petitioner asked. We agree with the Board. If deductions were allowed or disallowed on principles of right reason—that is on what it might be supposed the Congress would have allowed had the precise situation been brought to mind, and not on express statutory grant—petitioner's claim might well be regarded as meritorious. They are not, however, so awarded. The burden was upon the petitioner to show statutory authority. Helvering v. Inter-Mountain Life Insurance Co., 294 U.S. 686, 55 S.Ct. 572, 79 L.Ed. 1227; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348. It did not do so.

The decision of the Board was right. It is affirmed.

SIBLEY, Circuit Judge (concurring).

With respect to deduction of taxes as an "investment expense," Revenue Act of 1928, § 203 (a) (5), 26 U.S.C.A. § 203 and note, my views are these: A tax laid directly on an investment which is incurred and paid because of that investment is an investment expense. The taxable gross income of a life insurance company consists (section 202 (a), 26 U.S.C.A. § 202 and note) only of interest, dividends, and rents. The investments concerned, therefore, are loans, stocks, and lands. A general tax on the insurance company or its business would be a business expense perhaps, but not an investment expense. But sums it has to pay because it has specific loans, shares of stock, or pieces of land, are an expense of these investments although a tax. This is recognized in section 203 (a) (6) of the act, 26 U.S.C.A. § 203 and note, which deals with the investment expenses peculiar to land in the language "taxes and other expenses." Unless taxes be expenses the word "other" is meaningless. Taxes are here specially mentioned as to land in order to contrast them with local benefit assessments and betterments, things peculiar to landed investments. If, therefore, this company had proven that its loans or stocks had been directly taxed by the State of Texas I should think the taxes would be an expense of these investments to be deducted in order to reach the net interest and dividends which the United States intended to tax.

But this record shows that the capital and surplus of the company was first valued, then estimated reserves and real estate values were deducted under article 4754, Rev.Civ.Stats. of Texas, and the entire remainder taxed. The resulting value on which the tax was laid may have included the value of loans and stocks, but it may have included other things also. The tax paid is too remotely connected with these specific loans and stocks to be said to be an expense due to these investments.