INTERSTATE RESERVE LIFE INSURANCE COMPANY, AN ILLINOIS CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78638. Promulgated January 12, 1938.

*Raymond F. McNally, Jr., Esq.*, for the petitioner.
*E. L. Corbin, Esq.*, for the respondent.

OPINION.

LEECH: The respondent determined a deficiency in income tax against the petitioner in the amount of $411.68 for the calendar year 1932. This proceeding involves the correctness of that determination. The only issue now left as the subject of inquiry here is whether, in computing the net income of the petitioner for the calendar year 1932, the petitioner is entitled to the deduction of 4 percent of the mean of the reserve of "advance premium payments" under the provisions of section 202 (b) of the Revenue Act of 1932.

No testimony was taken. The case was submitted on the pleadings and certain stipulations of fact. We find the facts as thus evidenced.

The petitioner is an incorporated life insurance company. It was organized as the Merchants Reserve Life Insurance Co. under an act of the Legislature of the State of Illinois entitled "An Act to incorporate companies to do the business of life or accident insurance on the assessment plan, * * *", approved June 22, 1893, effective July 1, 1893.

The articles of incorporation of the petitioner have been amended several times. The amendments pertinent to our inquiry were those of September 1, 1921, July 18, 1923, and March 17, 1930. That of September 1, 1921, contained the following provision, *inter alia*:

ARTICLE X. Section 1. Policies of Insurance shall be written by this company with assessment rates based upon the American Experience Table of Mortality with four percent interest, and such policies shall be known as "Legal Reserve Policies"; the time when the company shall begin issuing such policies to be determined by vote of the Board of Directors; the issuance of such polices shall not affect the rates to be paid by policy holders under the policies heretofore authorized.

The amendment of July 18, 1923, provided for the establishment of an advance payment fund. Section 6 of those amended articles provides:

All deposits received from policy holders of Legal Reserve Policies in addition to the premiums required to continue the insurance in force shall be kept separate and apart from all premium payments and shall be placed in a Fund to be kept by the Company, known as the Advance Payment Fund.

All such deposits shall be improved by interest at the rate of four percent per annum and the interest credited at the end of each policy year.

Such interest payments shall be made from the Surplus Fund of the Company.

All or any part of the amount thus credited may be withdrawn in cash by the Insured after thirty days written notice by the Insured of his desire to withdraw all or such part of the amount thus credited, or may be applied by the Company towards the payment of premium if the policy should become in default in premium payment and the amount to the credit of the Insured is sufficient to pay at least one quarterly premium.

The amendment of March 17, 1930, provided for the change in the name of the company from the Merchants Reserve Life Insurance Co. to the Interstate Reserve Life Insurance Co.

The policy under which these advance premiums were paid contained, among others, the following provisions:

NOTICE OF PAYMENT, REINSTATEMENT

Notice of each and every payment due or to become due hereon is given and accepted by the delivery and acceptance of this policy. All premiums are due and payable at the Company's home office or its designated depositories. If any premium shall not be paid when due or within 30 days thereafter, this policy shall thereupon cease and determine unless maintained in force as provided under the heading "Privilege of Advance Premium Payments" on the Third page hereof. In case this policy is lapsed for non-payment of premium, it may

be reinstated within two years thereafter upon evidence of insurability satisfactory to the officers of the Company, and upon payment of all the premiums then due and unpaid with interest at 6% per annum. *No annual premium shall exceed in amount, in any one year, the annual premium stated, unless the mortality experience of the Company should exceed that of the American Experience Table of Mortality for such a period as to exhaust the mortuary and surplus funds and then only for an amount sufficient to pay the pro-rata share of the excess mortality.* [Emphasis supplied.] The private property of the policyholders of this Company shall be exempt from corporate debts.

### PREMIUM PAYMENTS

The annual renewal premium on this policy will be _____ Dollars payable in advance, but upon written application of the Insured, the Company will accept payment in semi-annual or quarterly payments in advance as follows:
_____ Dollars on the _____ day of _____ and _____; or: _____ Dollars on the _____ day of _____ and _____; provided that upon death of the Insured, any semi-annual or quarterly payment necessary to complete premium payment for the then current policy year will be deducted from the amount otherwise payable under the policy.

### DIVIDENDS

This policy shall participate annually beginning at the end of the first policy year in the surplus earnings of the Company as ascertained and apportioned by the Board of Directors provided all premiums required hereon have been duly paid. Such dividends shall be paid or applied according to one of the following options which the Insured may elect:
Option 1. Applied to reduce the premiums on the policy.
Option 2. Paid in Cash.
Option 3. Placed in the Advance Payment Fund to the credit of the Insured to be used in the manner prescribed for payments into said Fund as stated on the third page hereof.
Election of an option may be made when the policy takes effect or at any time thereafter and shall remain in effect until a new option is selected. If no option is selected, the dividends will be applied as in Option 1, and in the event of failure to pay the balance of the premium due, or in the event of payment of the full premium, will be paid into the Advance Payment Fund to be used in the manner prescribed for payments into said Fund as stated on the third page hereof.

### PRIVILEGE OF ADVANCE PREMIUM PAYMENTS

The Insured hereunder shall have the right, beginning with the second policy year, to deposit ANNUALLY IN ADVANCE with the Company the sum of _____ dollars, (hereinafter called deposit) each such annual deposit to be in addition to the annual renewal premium required for this insurance as stated on the second page hereof, making total payments of _____ dollars annually in advance.

In the event that the Insured does not exercise this privilege at the beginning of the second policy year, he or she shall have the privilege of beginning to make such deposits at the beginning of any subsequent policy year, by the payment of all omitted payments with interest compounded at the rate of

4 per cent per annum; provided, however, that no deposits will be received in any such case unless all the premiums required on the policy have been duly paid.

All such deposits shall be kept separate and apart from all payments made to the Company for other purposes and shall be held to the credit of this policy in a fund to be known as the Advance Payment Fund kept by the Company, and paid on account of this policy under the following conditions:

(1) Interest compounded at the rate of four per cent per annum shall be allowed on all such deposits, such interest to be paid into the Advance Payment Fund and credited to this policy at the close of each policy year.

(2) Upon thirty days written notice, the entire amount credited to this policy in the Advance Payment Fund may be withdrawn by the Insured in cash and this policy may thereafter be continued in force at the option of the Insured by the payment of the premium as stated on the second page of the policy.

(3) Should the Insured fail to pay any renewal premium when due, then any amount to the credit of this policy in the Advance Payment Fund, unless the Insured directs the Company otherwise in writing before the date of default in premium payment, shall be applied automatically to the payment of such premium or premiums as long as the amount in the Advance Payment Fund to the credit of this policy will be sufficient to pay at least one full quarterly premium.

All amounts thus applied will be charged against the Insured's account in the Advance Payment Fund when applied. While the policy is thus maintained in force, the Insured may resume the payment of premiums without medical examination.

If the amount in the Advance Payment Fund should become insufficient to pay at least one full quarterly premium, the Company will mail notice of this fact on or before the date of default in premium payment to the Insured at the last known address of the Insured, and thirty days after the mailing of such notice, provided the premium is still unpaid, will forward to the Insured in cash an amount equal to the amount to his credit in the Advance Payment Fund. Upon tender of such cash payment the insurance hereunder shall cease.

(4) Upon the death of the Insured, any amount to the credit of the Insured in the Advance Payment Fund shall be added to the face of this policy and paid to the beneficiary as herein provided.

(5) When the amount credited to this policy in the Advance Payment Fund at the beginning of the _____ year of the policy is equal to the amount stated in the Table of Accumulated Savings below at the beginning of the said _____ year, the Insured will be so notified, and thereafter, unless directed in writing by the Insured before the date of default in premium payment, the Company will apply the interest earnings at four per cent per annum on such amount to the payment of the annual renewal premium necessary to continue this insurance in force, any balance remaining after such payment has been made being paid in cash to the Insured; provided, however, that if subsequent to such date the Insured should withdraw in cash such an amount that the remaining balance will not earn sufficient interest at 4 per cent per annum to pay the renewal premiums when due, then premium payments will be continued thereafter only as stated in subdivision (3) hereof.

(6) An amount equal to the amount in the Advance Payment Fund shall be kept invested by the Company in securities among the kinds in which Life Insurance Companies in Illinois are required to invest their funds.

If the Insured should make all the additional annual deposits in advance as provided above and not withdraw any amount to his credit in the Advance Payment Fund, the accumulated amount to the credit of this policy after each annual deposit is made in advance will be as set forth in the following table:

*Table of Accumulated Savings in the Advance Payment Fund After the Deposit for the Year Designated Has Been Made.*

[Table follows.]

The advance premium payment fund for the year 1932 amounted to the following:

Beginning of that tax year_____ $22, 544. 82
End of such year_____ 20, 865. 62

The mean of that fund for such year is $21,705.22. In its income tax return for 1932, the petitioner deducted $868.20, 4 percent of that amount, to which deduction it claims it was entitled under the Revenue Act of 1932, section 202 (b).[1]

The propriety of the respondent's disallowance of this deduction presents the only issue.

The term "reserve funds required by law", as used in the revenue acts applying to insurance, has a very definite meaning. Thus the Supreme Court said in *Helvering* v. *Inter-Mountain Life Insurance Co.*, 294 U. S. 686:

* * * As the Act does not permit corporations other than insurance companies to make deductions of the kind here under consideration, "reserve funds" may not reasonably be deemed to include values that do not directly pertain to insurance. In life insurance the reserve means the amount, accumulated by the company out of premium payments, which is attributable to and represents the value of the life insurance elements of the policy contracts.

The Court of Claims, in *Continental Assurance Co.* v. *United States*, 8 Fed. Supp. 474, similarly defines and limits the expression:

* * * Properly interpreted we think these last-mentioned cases establish the principle that the term "reserve" has a special meaning in the law of insurance and means a sum of money variously computed or estimated which, with accretions from interest, is set aside, "reserved", as a fund with which to mature or liquidate, either by payment or reinsurance with other companies, future unaccrued and contingent claims. Also, that reserved for matured accrued claims which are payable in cash or subject to certain options cannot be included in the "reserve required by law" within the meaning of the taxing act. In the case of life-insurance companies, the computation of the reserve, in connection with which the deduction is allowable, is to be made upon the basis of an experience table of mortality and an assumed rate of

---

[1] SEC. 202. GROSS INCOME OF LIFE INSURANCE COMPANIES.

\*      \*      \*      \*      \*      \*      \*

(b) The term "reserve funds required by law" includes, in the case of assessment insurance, sums actually deposited by any company or association with State or Territorial officers pursuant to law as guaranty or reserve funds, and any funds maintained under the charter or articles of incorporation of the company or association exclusively for the payment of claims arising under certificates of membership or policies issued upon the assessment plan and not subject to any other use.

interest, the calculation of which is an actuarial function, and the reserve intended by the taxing act as a deduction is the amount set aside from premiums and built up by interest accretions to meet existing unmatured insurance, whether fire, marine, or life insurance. This principle excludes, as reserves within the meaning of the Federal taxing act, amounts held on account of matured obligations * * *.

So, it was held in both the cited cases that reserve funds maintained by a life insurance company to meet its liability to holders of matured unpaid coupons attached to its policies were not "reserve funds required by law" within the meaning of the revenue acts.

The advance premium fund here had not been applied under the policyholders' option, to the payment of premiums. It was held, therefore, only to guarantee the repayment of those advance premiums, with interest, to the stockholders, or the application of them, at the option of the stockholders, to the payment of premiums due. This obligation was matured and existing. It did not pertain to insurance. It was a mere solvency reserve similar to the reserves discussed in the cited cases. As such, therefore, this advance premium fund did not constitute "reserve funds required by law."

But the petitioner argues that the insurance contracts from which the advance premium fund arose were "assessment insurance" and that the "advance premium fund" made up from those payments was "maintained * * * exclusively for the payment of claims * * *" and that it was therefore entitled to the deduction of 4 percent of the mean of those funds for the taxable year. Sec. 202 (b), *supra*.

That section has appeared without change in every revenue act since and including that of 1921.[2] See also Revenue Act of 1916, sec. 12 (c). No authority has been called to our attention, construing that legislative provision. The reason may be that the answer is so obvious.

It would be difficult, if not impossible, to conclude from section 202 (b), *supra*, alone, that Congress intended "reserve funds required by law" in assessment insurance to include something not only definitely excluded by the term in other insurance, but wholly repugnant to the purpose of the phrase in the revenue acts. The Court of Claims, in the *Continental Assurance Co.* case, *supra*, stated this purpose clearly and its application here thus:

* * * But in the income-tax statutes Congress was not legislating with reference to solvency matters or accrued and unpaid claims or refunds of insurance companies; instead it was dealing with the determination of taxable income and the deductions from income in determining the amount subject to the income tax. For this reason matured or accrued claims, so long as they remain payable upon demand, have no place in the reserve contemplated in the taxing acts.

---

[2] Acts of 1921, 1924, and 1926, sec. 244 (b) ; Acts of 1928, 1932, and 1934, sec. 202 (b).

We conclude that the expression "claims arising under certificates of membership * * *" used in section 202 (b), *supra*, means life insurance claims, only, and does not include the claims of policyholders in connection with the advance premium fund here. This interpretation is supported by the construction of the substantially similar expression "policy obligations" in *Continental Assurance Co.* v. *United States, supra.*

We think section 202 (b), *supra*, does not change or broaden the scope of "reserve funds required by law" when used in connection with assessment insurance. In view of the fact that premium payments are the basic source of insurance reserves, excepting in assessment insurance (see Revenue Act of 1916, sec. 12, *supra; Continental Assurance Co.* v. *United States, supra*, and cases cited therein), it would seem that section 202 (b), *supra*, was meant merely to provide equality of treatment of assessment insurance by including within the meaning of "reserve funds required by law" funds raised by assessment as well as from premium payments.

*Decision will be entered for the respondent.*