COMMISSIONER OF INTERNAL REVENUE
v. LAFAYETTE LIFE INS. CO.

LAFAYETTE LIFE INS. CO. v. COMMIS-
SIONER OF INTERNAL REVENUE.

Nos. 4993, 4999.

Circuit Court of Appeals, Seventh Circuit.

Oct. 20, 1933.

A. E. James, of Washington, D. C. (George R. Beneman, of Washington, D. C., of counsel), for Lafayette Life Ins. Co.

Pat Malloy, Asst. Atty. Gen., Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen., and E. Barrett Prettyman, Gen. Counsel, Bureau of Internal Revenue, and James C. Maddox, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before ALSCHULER, EVANS, and FITZ HENRY, Circuit Judges.

EVANS, Circuit Judge.

Both parties appealed from a decision of the Board of Tax Appeals which determined taxpayer's income taxes for the years 1925, 1926, and 1927. Two questions are raised by the Commissioner and one by the taxpayer.

The fact situation necessary for consideration of the Commissioner's two questions may be stated thus:

The taxpayer is a mutual life insurance company organized in Indiana and having its principal place of business in that state. It kept its books and made its returns on the basis of cash receipts and disbursements. In its returns for 1925, 1926, and 1927, it included among its deductions:

(a) Sums paid as interest upon debts, as follows: $7,888.33 for 1925; $30,465.62 for 1926; $7,760.19 for 1927. Commissioner disallowed this item because no debt was shown. The Board sustained the Commissioner.

(b) Sums claimed as depreciation on furniture and fixtures in each of the three years. The Commissioner objected to any allowance over and above a sum which represented the depreciation on said furniture and fixtures

used in the investment portion of its business. The Board found in favor of the taxpayer.

(c) Sums paid as taxes, etc., arising out of the ownership of the home office without including in its gross income a certain rental value for space occupied by it. The Board allowed the deduction.

Excerpts from the findings of the Board bearing on the three questions are set forth in the margin.[1]

As has been observed (Tyler v. U. S., 281 U. S. 497, 503, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758) the subject of taxation is a very practical matter, and disposition of tax questions must be approached on this assumption. The imposition of taxes, as well as the construction of the revenue laws which levy such taxes, necessitates an understanding of the conditions peculiar to the industry taxed. The varying amounts, the basis of allowing credits, and even of determining income are not understandable without a fact background illuminative of the activities and the problems of the industry involved.

It is evident from an examination of the statutes and the Congressional Record (House Report No. 8245, Sixty-seventh Congress, First Session, pp. 83–93) that Congress in the 1921 act so approached the levy of taxes upon life insurance companies. This Revenue Act and the Regulations of the Treasury Department promulgated pursuant thereto, dealing with life insurance companies, quite radically changed the method of determining taxable income. These changes were made at the request of the insurance companies who felt aggrieved over the alleged clumsy and inequitable provisions of the income tax laws applicable to them. Provisions of the Revenue Act of 1926 and Treasury

---

[1] "Pursuant to stipulation of the parties, we find that (taxpayer) * * *

"During the years 1905 to 1909, inclusive, * * * issued deferred dividend insurance policies which contained, among others, the following provisions:

"Dividends in Case of Death.

"In the event of the death of the insured within 20 years from date, this Policy being in full force and effect, the Company will pay the principal sum of ——— Dollars, and in addition thereto this Policy's full share of the surplus profits, as apportioned by this Company.

"Dividends if Living.

"If the insured be living and this Policy is in full force and effect on the ——— day of ———, (20 years from the date of issue of the Policy) the Company will then apportion to this Policy its full share of the surplus profits, as determined by this Company, and the insured shall then have one of the following options: * * *

"In connection with its determination of surplus earnings petitioner annually determined the amount of dividends applicable to the deferred dividend policies, but pursuant to the terms of the policy contract retained the said dividends so apportioned and recorded. Said dividends were neither paid to the insured nor applied in the reduction of premiums prior to the death of the insured or a date twenty years after the date of said policy, whichever date was the earlier. In or about the year 1909, petitioner discontinued issuing deferred dividend policies and thereafter all policies written by petitioner provided for annual participation by the policy holders in the yearly surplus earnings and savings of the petitioner. The policy holders had the option to leave such dividends with the petitioner, in which event petitioner agreed to pay interest upon the amounts so left.

"At about twenty years after the date the deferred dividend policies were first written, petitioner determined that it would pay to the living holders of such policies, as and when the date for distribution of dividends was reached, an amount equal to the interest at 3½ per cent compounded annually upon the surplus profits of the several years apportioned to said policies and theretofore retained by petitioner. In the year 1925, as to some of the deferred dividend policies, in the year 1926 as to a larger number of said policies, and in the year 1927 as to a smaller number, the date for distribution of

the said dividends was reached, and in each of the said years petitioner computed an amount equivalent to interest at 3½ per cent compounded annually on the surplus profits theretofore apportioned to and set aside for the policy holders under said policies. Said amounts were $7,883.33 in 1925, $30,435.62 in 1926, and $7,760.19 in 1927, and these amounts computed as hereinabove set forth were paid or credited to policy holders during the respective years 1925, 1926 and 1927, and where credited to the said policy holders were applied by them in each of the said years respectively to payment of premiums upon the said or other policies.

"In its returns of income for the years 1925, 1926 and 1927, petitioner deducted in each of said years, respectively, the said sums of $7,883.33, $30,465.62 and $7,760.19. The Commissioner thereafter audited the said returns, disallowed the said $7,883.33 as a deduction in the year 1925, the said $30,465.62 as a deduction in the year 1926, and the said $7,760.19 as a deduction in the year 1927, and determined the deficiencies here in issue. * * *

"In its income tax returns petitioner included as a part of its gross income for each taxable year, the rental value of the space occupied by it as its home office in the building owned by petitioner as follows: For 1925, $13,067.61; for 1926, $8,543.33; for 1927, $7,862.03. The book value of the building during each taxable year was $425,952.92. Petitioner determined the rental value of the space it occupied by subtracting the net amount of rentals received from other tenants from $17,033.12, which was 4 per cent of the building's value. In computing net rentals petitioner made the following deductions from gross rentals received from tenants other than itself:

| | 1925 | 1926 | 1927 |
|---|---|---|---|
| Taxes on home office... | $ 6,200.00 | $ 6,250.00 | $ 6,750.00 |
| Depreciation | 6,799.04 | 6,799.05 | 6,799.05 |
| Other expenses........ | 22,830.63 | 20,410.57 | 19,025.62 |
| Total deductions.... | $35,989.74 | $33,459.62 | $32,574.67 |

* * * * * * * * *

"By his amended answer respondent alleges that he erred in allowing depreciation deductions of $788.88 for the year 1926, and of $361.60 for the year 1927; that the correct amounts allowable are $201.07 and $217.20, respectively, and prays that petitioner's net income as shown by the deficiency letter be increased by the amount of $587.81 for the year 1926; and by $344.40 for the year 1927; and further prays that the deficiency for each year be increased accordingly."

Regulations are set forth in the margin.[2] The radical change this act occasioned was over what was included in "gross income."

By this act the taxable income of a life insurance company was limited to its *investment* income. What was included in the taxable income—the investment income ("interest, dividends, and rents")—is not in controversy, but the parties are at wide variance over allowable deductions (section 245 (a) (7) (8), 26 USCA § 1004 (a), (7, 8), and Treasury Regulations 69).

The Commissioner's position, broadly stated, is that it would be illogical and in effect a double exemption to permit a life insurance company to exclude from its taxable income, amounts collected for operating expenses and at the same time include these same expenses in its deductions. The taxpayer on the other hand contends that the whole matter is one of statute and that it is entitled to those deductions which Congress allowed.

Taking up first the deductions claimed for depreciation on furniture and fixtures used in the underwriting part of its business, we find the taxpayer relying upon section 245 (a) (7) of the act, 26 USCA § 1004 (a) (7), which permits "a reasonable allowance for the exhaustion, wear and tear of property, including a reasonable allowance for obsolescence." It is the taxpayer's urge, and the Board sustained its contention, that this provision of the 1926 act is identical with the language permitting similar deductions to other corporations (section 234 (a) (7) of the act, 26 USCA § 986 (a) (7),) and also that, where there are no limitations on the allowance for exhaustion, wear and tear of property, such items should be allowed regardless of the department of the business wherein they occurred. It is likewise argued that where identical language is used in different sections of the revenue laws, the same construction should be given to such language.

We are not unmindful of the force of this last contention, but we are not persuaded that the Commissioner's construction is inconsistent with the language of section 245 (a) (7) or contrary to the construction of section 234 (a) (7). The "reasonable allowance for obsolescence" leaves open the questions: Upon what property is obsolescence to be figured? and what significance has the word "reasonable"?

The language which we must construe appears in the sections of the 1926 act devoted

---

[2] Sec. 244. "(a) In the case of a life insurance company the term 'gross income' means the gross amount of income received during the taxable year from interest, dividends, and rents."

Sec. 245. "(a) In the case of a life insurance company the term 'net income' means the gross income less— * * *

"(5) Investment expenses paid during the taxable year: *Provided*, That if any general expenses are in part assigned to or included in the investment expenses, the total deduction under this paragraph shall not exceed one-fourth of 1 per centum of the book value of the mean of the invested assets held at the beginning and end of the taxable year;

"(6) Taxes and other expenses paid during the taxable year exclusively upon or with respect to the real estate owned by the company, not including taxes assessed against local benefits of a kind tending to increase the value of the property assessed, and not including any amount paid out for new buildings, or for permanent improvements or betterments made to increase the value of any property. The deduction allowed by this paragraph shall be allowed in the case of taxes imposed upon a shareholder of a company upon his interest as shareholder, which are paid by the company without reimbursement from the shareholder, but in such cases no deduction shall be allowed the shareholder for the amount of such taxes;

"(7) A reasonable allowance for the exhaustion, wear and tear of property, including a reasonable allowance for obsolescence;

"(8) All interest paid or accrued within the taxable year on its indebtedness, except on indebtedness incurred or continued to purchase or carry obligations or securities (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from taxation under this chapter; and * * *

"(b) No deduction shall be made under paragraphs (6) and (7) of subdivision (a) on account of any real estate owned and occupied in whole or in part by a life insurance company unless there is included in the return of gross income the rental value of the space so occupied. Such rental value shall be not less than a sum which in addition to any rents received from other tenants shall provide a net income (after deducting taxes, depreciation, and all other expenses) at the rate of 4 per centum per annum of the book value at the end of the taxable year of the real estate so owned or occupied." 26 USCA §§ 1003 (a), 1004 (a) (5-8), (b).

Treasury Regulations 69, promulgated under the Revenue Act of 1926.

"Art. 686. *Home office properties.*—No deduction shall be made for any taxes, expenses, or depreciation on account of any real estate owned and occupied in whole or in part by a life insurance company unless there is included in the return of gross income the rental value of the space so occupied. Such rental value shall not be less than a sum which in addition to any rents received from other tenants shall provide a net income (after deducting taxes, depreciation, and other expenses) at the rate of 4 percent per annum of the book value at the end of the taxable year of the real estate so owned and occupied. For example, if the book value of a parcel of real estate owned and occupied in whole or in part by the company is $1,000,000, the rents received from other tenants $30,000, taxes and expenses $40,000, and depreciation $20,000, the company would have to include in its gross income a sum not less than $70,000 ($40,000 taxes and expenses, plus $20,000 depreciation, minus $30,000 rents from tenants, plus 4 percent of $1,000,000) as the rental value of the space occupied by it in order to avail itself of the deductions of $40,000 and $20,000. In any case the rents received from other tenants must be included in gross income."

to life insurance. It was an amendment to the existing life insurance tax provisions. The items to be included in the taxpayer's income under the amendment were as specific as the items of deduction. Neither was specifically limited to investment business. Neither excluded such a limitation. Why then should income of taxpayer be limited to investment income without such words of limitation? And if income is thus limited, why would not the deductions from income be given the same limitations; namely, limitations arising out of the investment business?

■■ The taxpayer contends that it is entitled to deduct taxes, depreciation, and other expenses on its home office building and is not required to include in gross income an amount (computed according to the statute) for space occupied by it therein. In other words, the Government cannot under the guise of taxing income declare that to be income which is not income and impose burdens in violation of the due process and equal protection provisions of the Constitution.

The Government's position, briefly stated, is that the law does not compel a life insurance company to report as income the rental value of such portion of its home office as it occupies, but merely provides that, if the company claims the benefit of a deduction for depreciation, taxes, and other expenses with respect to its home office property, it shall include as part of its income the rental value of space so occupied, and that such rental value, in addition to the other rents received, shall (after depreciation, taxes, and other expenses have been deducted) equal four per cent. of the book value of the building.

The approach to this question must be the same as to the previous one. Congress was dealing with a particular industry whose business was unique. Justice to it, as well as to the Government, required a different and special treatment in the Revenue Law. One of the reasons for its demanding special treatment was traceable to the fact that most life insurance companies erect large home office buildings. In some instances, all the space of such buildings is occupied by the insurance company. In other instances, part of the space is occupied by the investment branch of the insurance company; part by the underwriting department of its business; and still another part is rented to outside concerns. As a general rule, it might be observed that the portion allotted to the investment end is not large. Yet only the income traceable to the investment branch of the business is included in the taxpayer's gross income. To permit a deduction of all taxes on the entire business and all depreciation on the entire building from income to which the use of but a small part of the building contributed, would be inequitable and unjust.

Congress, therefore, apparently concluded that the taxpayer was to be given an option. It could eliminate the deductions here claimed altogether and thereby avoid any inclusion of rental charges for space by it occupied, or it could make the deductions here asserted, provided a rental charge was included in the gross income. The requirement that the rental (in case deductions were taken) should equal four per cent. on the value of the property was a limitation on the taxpayer's option, but it did not change the fact that the question presented is not one of income but one of deductions, the soundness or fairness of which, we assume, was fully considered when the act was passed.

We see no reason why Congress, having wide powers in respect to deductions, could not as an incident thereto place conditions or limitations upon the taxpayer's right to claim such deductions. The fact background upon which action was predicated was doubtless before Congress when it acted and was for the most part furnished by spokesmen of life insurance companies. We cannot assume that the method adopted—that of allowing certain deductions only upon condition that the net income of the building should equal four per cent. of the investment represented by it—is not a practical and fair way of determining the life insurance company's income in view of the numerous uses to which the home office is devoted. Accepting as we do this theory of the act and giving full weight to the significant fact that the act limits the taxpayer's right to claim a deduction rather than lays a tax upon the taxpayer, we see no reason for the contention that the act is unconstitutional.

We therefore conclude that the Commissioner was correct in his determination of deductions as to this and the previous item.

■ The taxpayer's attack on the Board's refusal to allow it to deduct a sum as "interest on its debts" must stand or fall on the meaning and the application of the word "debt" to the facts in the case. The facts are not in dispute. The taxpayer paid the policy holders an amount equal to a sum reached by computing 3½ per cent. interest compounded an-

nually on the so-called debt. The taxpayer called the principal sum a debt and the amount paid thereon, interest. The Commissioner asserted the principal upon which the interest was computed was not a debt and the payments were not interest but merely premiums.

The opposing litigants have switched the positions by them taken on the other two items. The Commissioner is here standing on the letter of the statute calling for a strict construction of its words. The taxpayer feels strongly the equities of its case and asks for a construction which will harmonize with said equities.

Attention is called to the language of the policy which obligates the company to pay "the principal sum of —— Dollars, *and in addition thereto this Policy's full share of the surplus profits*" etc. The Board also found in "its determination of surplus earnings * * * (taxpayer) annually determined the amount of dividends applicable to the deferred dividend policies."

This written obligation of the taxpayer meets the legal definition of "debt," and the payment made by the taxpayer to its policy holders was interest upon said debt. There may not have been by the terms of the debt an obligation to pay interest thereon, but the statute makes no such requirement when it provides for the payment of interest. Section 245 (a) (8) of the act, 26 USCA § 1004 (a) (8), provides for a deduction in the following language: "all interest *paid* or accrued within the taxable year on its indebtedness." An indebtedness necessitates the existence of a legal obligation. But interest actually paid upon an indebtedness may originate with a legal liability or obligation, or from equitable or moral considerations.

We conclude therefore that the taxpayer's policy agreement to the policy holder created a debt even though the exact amount was not ascertained and the date of payment was conditional. We also conclude that the amounts *paid,* which were computed upon such a debt at 3½ per cent. compounded annually, were "interest paid * * * on its indebtedness" within the language of the statute.

The orders of the Board of Tax Appeals are reversed, and the cause remanded for a redetermination of the taxpayer's taxes for the years 1925, 1926, and 1927, in accordance with the views here expressed. Each side shall pay its costs on their respective appeals.