## EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES v. HELVERING, Com'r of Internal Revenue.

### No. 4.

Circuit Court of Appeals, Second Circuit.

July 26, 1943.

Campbell Locke, of New York City (James D. Ewing and John L. Grant, both of New York City, of counsel), for petitioner-appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen. (Sewall Key, J. Louis Monarch, and L. W. Post, Sp. Assts. to Atty. Gen., of counsel), for Commissioner of Internal Revenue, respondent-appellee.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The question raised by the petition of the taxpayer, Equitable Life Assurance Society, is whether the Tax Court in determining that the taxpayer overpaid its income tax for 1933 by $40,175.79 improperly failed to allow various deductions which would have resulted in a determination of a claimed overpayment of $182,168.23.

The taxpayer is a mutual life insurance company engaged in the business of issuing life insurance and annuity contracts, transacting that business in every state except Texas. More than 50% of its total reserve funds have been held for fulfillment of its life insurance and annuity contracts.

During and prior to the year 1933 the taxpayer issued life insurance policies which gave to the insured and in some cases to the beneficiary, the right to require it to hold the face amount of policies after the date upon which they would otherwise be payable, supplement these amounts with annual increments of interest, and pay out the increased amounts in installments over varying periods of time. The contracts which evidence the exercise of such options under these provisions are known as "Supplementary Contracts," the form of which appears below.[1] When the payments to be made under these contracts are not affected by a life contingency (contracts arising from the exercise of options 1, 2 and 4) they are known as supplementary contracts not involving life contingencies and are thus referred to in the stipulation appearing in the record.

The Tax Court held that these "Supplementary Contract Reserves" were not "re-

---

[1] Modes of Settlement at Maturity of Policy

The Insured may elect to have the net sum due under this policy upon its maturity applied under one or more of the following optional modes of settlement in lieu of the lump sum provided for on the first page hereof, and in the absence of such an election by the Insured, the beneficiary, after the Insured's death, may so elect. The beneficiary, after the Insured's death, may designate (with the right to change such designation) the person to whom any amount remaining unpaid at the death of the beneficiary shall be paid if there be no such person designated by the Insured and surviving. Such election, designation or request for change shall be in writing and shall not take effect until filed with the Society at its Home Office and endorsed upon the policy or the supplementary contract, if any.

1. Deposit Option:

Left on deposit with the Society at interest guaranteed at the rate of 3% per annum, with such Excess Interest Dividend as may be apportioned.

2. Instalment Option:

Fixed Period.

Paid in a fixed number of equal annual, semi-annual, quarterly or monthly instalments as set forth in the following table.

3. Life Income:

Option:

Paid in equal annual, semi-annual, quarterly or monthly instalments for five, ten or twenty years certain as may be elected and continuing during the remaining lifetime of the beneficiary as shown in the following table.

4. Instalment Option:

Fixed Amount.

Paid in equal annual, semi-annual, quarterly or monthly instalments of such amount as may be agreed upon until the net sum due under this policy together with interest on the unpaid balances at the rate of 3% per annum, and such Excess Interest Dividends as may be apportioned, shall be exhausted, the final payment to be the balance then remaining with the Society. If the interest and Excess Interest Dividend for any year shall be in excess of the instalments payable in such year, then the total amount of the instalments for the subsequent year shall be increased by the amount of such excess.

Excess Interest Dividend: The foregoing Options are based upon an interest earning of 3% per annum; but if in any year the Society declares that funds held under such Options shall receive interest in excess of 3% per annum, the interest under Option 1, the amount of instalment under Option 2, the amount of income during the fixed period of five, ten or twenty years under Option 3 and the funds held under Option 4, shall be increased for that year by an Excess Interest Dividend as determined and apportioned by the Society.

\*     \*     \*     \*     \*     \*

No option of settlement elected by the Insured hereunder can be changed nor can any payment thereunder be commuted, except by the Insured's written order filed with the Society at its Home Office.

Under Options 2, 3, and 4, the first installment will be due upon receipt of due proof of death. \* \* \*

serve funds required by law" within the meaning of Section 203(a) (2) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 547,[2] inasmuch as they represented assets retained to meet the company's liabilities upon insurance policies which had already matured, and not assets held against unmatured policies. The supplementary contracts provided for interest at a guaranteed rate of 3% per annum. They also provided that in any year when the taxpayer declared that funds held thereunder should receive interest in excess of 3%, the payment should be increased for that year by an excess interest dividend as determined and apportioned by the Society.

The Tax Court allowed the taxpayer to deduct these 3% payments in computing its income tax for the years 1933 and 1934 when the options were exercised by beneficiaries but, on the authority of Penn Mutual Life Insurance Co. v. Commissioner, 3 Cir., 92 F.2d 962, did not allow the deduction when the option was exercised by the insured.

The foregoing allowance of a deduction of 3 per cent was on the theory that, while Section 203(a) (2) did not apply because the reserve funds were for Supplementary Contracts not Involving Life Contingencies, nevertheless Subdivision (8) of Section (a) [3] was applicable in so far as it related to interest paid on supplementary contracts covered by options exercised by the beneficiary. But the Tax Court refused to allow, under Subdivision (8), the deduction of the 3 per cent guaranteed interest where the insured had exercised the option, and of socalled "excess interest dividends" paid in addition to the guaranteed 3 per cent under resolutions of the Board of Directors, on the ground that they were not interest and hence not deductible under Subdivision (8).

The taxpayer claims the deduction of 3 3/4 per cent of the mean of the reserve funds held at the beginning and end of 1933 and 1934 because of the literal words of Section 203(a), the former Regulations of the Treasury Department,[4] which had for thirteen years expressly permitted the deduction, and the long settled practice thereunder, but in Helvering v. Inter-Mountain Life Ins. Co., 294 U.S. 686, 690, 55 S. Ct. 572, 574, 79 L.Ed. 1227, the Supreme Court determined that assets reserved by an insurance company against matured, unsurrendered and unpaid coupons attached to its 20-payment life non-participating policies were not "reserve funds required by law" within the meaning of Section 245(a) (2) of the Revenue Act of 1921 (of which Section 203(a) (2) of the Act of 1932 is a reenactment) allowing deduction of a percentage of the mean of such reserve funds in computing the net income of life insurance companies. The Treasury thereupon changed the Regulation.[5] Justice Butler, who wrote the opinion, said (294 U.S. at page 690, 55 S.Ct. at page 574, 79 L.Ed. 1227) : "As the act does not permit corporations other than insurance companies to make deductions of the kind here under consideration, 'reserve funds' may not reasonably be deemed to include values that do not directly pertain to insurance."

In the later decision of Helvering v. Illinois Ins. Co., 299 U.S. 88, 516, 622, 57 S.Ct. 63, 64, 81 L.Ed. 56, 458, Justice Butler, citing Helvering v. Inter-Mountain Life Ins. Co., 294 U.S. 686, 55 S.Ct. 572, 79 L.Ed. 1227, repeating the court's former view as to the limited scope of the deduc-

---

[2] "Sec. 203. Net Income of Life Insurance Companies

"(a) General Rule. In the case of a life insurance company the term 'net income' means the gross income less—

*  *  *  *  *  *  *

"Reserve Funds. An amount equal to 4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the taxable year, except that in the case of any such reserve fund which is computed at a lower interest assumption rate, the rate of 3¾ per centum shall be substituted for 4 per centum. Life insurance companies issuing policies covering life, health, and accident insurance combined in one policy issued on the weekly premium payment plan, continuing for life and not sub-

ject to cancellation, shall be allowed, in addition to the above, a deduction of 3¾ per centum of the mean of such reserve funds (not required by law) held at the beginning and end of the taxable year, as the Commissioner finds to be necessary for the protection of the holders of such policies only."

[3] "(8) Interest. All interest paid or accrued within the taxable year on its indebtedness, except on indebtedness incurred or continued to purchase or carry obligations or securities  *  *  *  the interest upon which is wholly exempt from taxation under this title."

[4] Treasury Reg. 62, Art. 681 (1921 Act).

[5] T. D. 4615, XIV 2 C. B. 310 (1935).

tion allowed under Section 203(a) (2) said: "The phrase 'required by law' includes only reserves that directly pertain to life insurance. Other reserves, even though required by state statutes regulatory of the business authorized to be carried on by life insurance companies, are not included. Under these policies the company's liabilities on account of the investment funds are independent of those attributable to life insurance risks. The right to participate in the investment funds is not dependent upon death of the insured."

In Helvering v. Oregon Ins. Co., 311 U. S. 267, 61 S.Ct. 207, 209, 85 L.Ed. 180, the Supreme Court again dealt with the types of "reserve funds required by law" which are deductible by life insurance companies under Section 203(a) (2). It adverted to the fact that it had theretofore held in the Inter-Mountain Life Insurance case that "reserves set aside by life insurance companies to protect payment of policy investment purchases cannot be used as the basis for deductions." In Helvering v. Oregon Ins. Co. we find no indication of a purpose to depart from the views expressed by Justice Butler in the earlier decisions we have mentioned.

While it may be argued with some plausibility that there is little basis for distinguishing between the investment and the insurance features of such policies as we are dealing with and that every payment to an insurance company has both contingent and investment features, we think the Supreme Court holds that Congress has not given the privilege of deduction to values that have as little relation to contingencies of life insurance as those involved in the Supplementary Contract Reserves under consideration. The reserves here were carried in order to provide for the payment of matured life insurance policies and not to meet life contingencies. If we are right in supposing that the foregoing represents the holding of the Supreme Court even where the earlier Regulations of the Treasury Department allowed such deductions as are claimed here, it is unnecessary to discuss Regulations 77 promulgated by the Treasury under the Revenue Act of 1932, Art. 971.

Because of the foregoing considerations we think that the Tax Court was right in holding that Section 203(a) does not allow the deduction claimed. We also think it was right in allowing the deduc-

tion of 3 per cent interest paid under settlement options exercised by the beneficiaries; but, we think it should also have allowed deductions where the options were exercised by the insured. In disallowing deductions in such cases it relied on Penn Mut. Life Ins. Co. v. Commissioner, 92 F.2d 962. There the Court of Appeals for the Third Circuit disallowed the deductions on the ground that the obligation to pay was not due. With due respect for the decision in Penn Mut. Life Ins. Co. v. Commissioner, supra, we are not persuaded that it should make any difference whether the insured or the beneficiary has exercised the option. Upon the death of the policyholder the company became a debtor of the beneficiary in the face amount of the policy, and the additional payments were interest paid or accrued within the taxable year on an indebtedness of the company even though the due date of the indebtedness may have been postponed by the insured. We, therefore, hold that the decision of the Tax Court should be modified so as to allow the deduction of the guaranteed interest whether the options were exercised by the insured or the beneficiary.

Last of all, the taxpayer contends that the excess interest payments in 1933 and 1934 were improperly disallowed and that they ought to have been deducted because they were of the essential nature of interest. The Court of Appeals of the Third Circuit allowed a similar deduction in Lederer v. Penn Mut. Life Ins. Co., 258 F. 81; but in Penn Mut. Ins. Co. v. Commissioner, 92 F.2d 962, 970, held that the additional interest was in the nature of a dividend, and was not deductible as "interest on indebtedness." On the other hand, the Seventh Circuit held that such excess interest was deductible in Commissioner v. Lafayette Ins. Co., 67 F.2d 209, and the Board allowed a similar deduction in Jefferson Standard Life Ins. Co. v. Commissioner, 44 B.T.A. 314. While the latter case involved a stock insurance company, a distinction between stock and mutual insurance companies was probably not intended by Congress. See remarks of Senator LaFollette, 75 Cong.Rec. 11636. But it seems to us that a payment which may be made or withheld at the will of the directors of the company cannot be regarded as a payment of interest within the 'rict construction we are bound to adopt in construing an exemption statute. Under Section 163(a) of the Revenue Act of 1942,

amending 26 U.S.C.A. Int.Rev.Code, § 201(c) (6) (B), Congress provided that: "All amounts in the nature of interest, whether or not guaranteed, paid within the taxable year on insurance or annuity contracts (or contracts arising out of insurance or annuity contracts) which do not involve at the time of payment, life, health or accident contingencies" are deductible. Since the foregoing section was enacted it is true that excess interest dividends such as are here involved would be deductible like guaranteed interest. It seems clear that the statute was amended in order to make the excess interest dividends deductible as interest because theretofore they had not come within a strict construction of the statute and had been held by the Third Circuit to be outside its scope.[6]

The order of the Tax Court is modified so as to allow the deduction of guaranteed interest paid in connection with settlements of options exercised by the insured where they have been disallowed by that court and as thus modified is affirmed.

---

[6] "It is believed that no distinction should be made based on the person choosing the method of payment and that the full amount of the interest paid instead of only the guaranteed interest should be considered as interest paid. The guaranteed interest where the insured exercises the option and the so-called excess interest dividends are in the nature of interest even though they may not come within a strict construction of that term." Senate Finance Committee, Report on Revenue Bill of 1942, 1943—2 P. H. Tax Serv. p. 16,016.